CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Nehemiah Kong**, <br><br> Plaintiff, <br><br> v. <br><br> **Gilbert C. Rhee**, in individual and representative capacity as trustee of The Gilbert C. and Sungim K. Rhee Family Trust dated February 15, 1989; <br> **Sungim K. Rhee**, in individual and representative capacity as trustee of The Gilbert C. and Sungim K. Rhee Family Trust dated February 15, 1989; <br> **Daryoush Namiranian**; and Does 1-10, <br><br> Defendants. | **Case No**. <br><br> **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Nehemiah Kong complains of Defendants Gilbert C. Rhee, in individual and representative capacity as trustee of The Gilbert C. and Sungim K. Rhee Family Trust dated February 15, 1989; Sungim K. Rhee, in individual and representative capacity as trustee of The Gilbert C. and Sungim K. Rhee Family Trust dated February 15, 1989; Daryoush Namiranian; and Does 1-10 ("Defendants"), and alleges as follows:

1

Complaint

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who suffers from Polio. He uses a wheelchair for mobility. He has a specially equipped van with a ramp that deploys out of the passenger side of his van.

2. Defendants Gilbert C. Rhee and Sungim K. Rhee, in individual and representative capacity as trustees of The Gilbert C. and Sungim K. Rhee Family Trust dated February 15, 1989, owned the real property located at or about 13917 Harbor Blvd., Garden Grove, California, in April 2018.

3. Defendants Gilbert C. Rhee and Sungim K. Rhee, in individual and representative capacity as trustees of The Gilbert C. and Sungim K. Rhee Family Trust dated February 15, 1989, own the real property located at or about 13917 Harbor Blvd., Garden Grove, California, currently.

4. Defendant Daryoush Namiranian owned the Harbor Pizza located at or about 13917 Harbor Blvd., Garden Grove, California, in April 2018.

5. Defendant Daryoush Namiranian owns the Harbor Pizza located at or about 13917 Harbor Blvd., Garden Grove, California, in April 2018.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

2

Complaint

**JURISDICTION & VENUE:**

7. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to Harbor Pizza in April 2018.

11. Harbor Pizza is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of Harbor Pizza.

13. Unfortunately, there were no van-accessible parking stalls marked and reserved for persons with disabilities located in front of Harbor Pizza on the day of plaintiff's visit.

14. The only parking stalls reserved for persons with disabilities in front of Harbor Pizza measured 96 inches in width while the access aisle measured 60 inches in width on the day of plaintiff's visit. These are not van accessible.

15. Additionally, all the parking stalls and access aisles were not level with each other because there were built up curb ramps running into the access aisles.

16. These curb ramps caused slopes greater than 2.1%.

Complaint

17. Also, each of the parking spaces marked and reserved for persons with disabilities had slopes greater than 2.1%.

18. There are currently no compliant, van-accessible parking spaces in front of Harbor Pizza.

19. Currently, all the parking stalls and access aisles are not level with each other because there are built up curb ramps running into the access aisles.

20. Currently, these curb ramps cause slopes greater than 2.1%.

21. Currently, there are inaccessible slopes in both the access aisles and parking stalls.

22. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

23. Meanwhile, even though there are other parking spaces marked and reserved for persons with disabilities who drive vans in the shopping center, those parking spaces do not serve Harbor Pizza.

24. Indeed, if plaintiff wanted to use other van parking spaces marked and reserved for persons with disabilities in the shopping center, he would have to travel behind parked cars as well as travel with cars in the vehicular drive paths to make it back to Harbor Pizza. This is not accessible to plaintiff.

25. Plaintiff personally encountered this barrier.

26. This inaccessible parking lot denied the plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment.

27. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Harbor Pizza.

28. Meanwhile, and even though plaintiff did not personally confront the barriers, the transaction counter at Harbor Pizza is more than 36 inches in height. In fact, the transaction counter is 43inches high.

29. There is no lowered, 36 inch portion of the transaction counter at

Complaint

Harbor Pizza for use by persons in wheelchairs.

30. Restrooms are also one of the facilities, privileges, and advantages offered by Defendants to patrons of Harbor Pizza.

31. The restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the finish floor. In fact, the restroom mirror is 57 inches high.

32. The plumbing underneath the sink is not wrapped to protect against burning contact.

33. Plaintiff plans to return and patronize Harbor Pizza but is deterred from visiting until the defendants remove the barriers.

34. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

35. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

36. For example, there are numerous paint/stripe companies that will come and stripe a level parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

37. Another common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

38. Meanwhile, the mirror in the restroom could be removed or lowered so

Complaint

that it is accessible.

39. Wrap can be installed under the sink at a cost of no more than $25.

40. Plaintiff is deterred from returning and patronizing Harbor Pizza because of his knowledge of the barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize Harbor Pizza as a customer once the barriers are removed.

41. Given the obvious and blatant nature of the violations and barriers alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

42. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

43. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices,

or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

44. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

45. Here, the failure to provide a van accessible parking space in front of Harbor Pizza is a violation of the ADA.

46. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle is not level and has a ramp taking up

part of the access aisle. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id*. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

47. Here, the failure to provide level parking is a violation of the law.

48. Under the ADA, there must be at least one accessible route connecting every building on the same site. 1991 Standards § 4.3.2(2); 2010 Standards § 206.2.2. Travel in the vehicular drive path with vehicles is not part of an accessible route.

49. Here, the failure to provide an accessible route is a violation of the law.

50. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

51. Here, no such accessible counter has been provided, in violation of the ADA.

52. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

53. Here, the mirror is mounted higher than the maximum permitted and is

a violation of the ADA.

54. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

55. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

56. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

57. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

58. Given its location and options, plaintiff will continue to desire to patronize Harbor Pizza but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

59. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

60. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

Complaint

61. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

62. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: May 29, 2018      CENTER FOR DISABILITY ACCESS

By: _____

Chris Carson, Esq.
Attorney for plaintiff

Complaint